# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY D. JUSTICE, II, | : |
|     Plaintiff, | : Case No. _____ |
| v. | : JURY TRIAL DEMANDED |
| PLANTRONICS, INC., ROBERT C. HAGERTY, MARV TSEU, DAVE SHULL, KATHY CRUSCO, BRIAN DEXHEIMER, GREGGORY HAMMANN, GUIDO JOURET, TALVIS LOVE, MARSHALL MOHR, DANIEL MOLONEY, AND YAEL ZHENG, | : COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934 |
|     Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

## NATURE OF ACTION

1. On March 28, 2022, Plantronics, Inc. ("Plantronics" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") to be acquired by HP Inc. ("HP") and Prism Subsidiary Corp. ("Merger Sub") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, Plantronics' stockholders will receive $40.00 in cash per share.

3. On May 2, 2022, defendants filed a proxy statement (the "Proxy") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Proxy fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 15 U.S.C. § 78aa because the Proxy, which plaintiff alleges to be materially false and misleading, was transmitted by defendants into this District, including to plaintiff, who resides in this District.  *See, e.g., Wojtunik v. Kealy*, 2003 WL 22006240, at *5-6 (E.D. Pa. Aug. 26, 2003).

**THE PARTIES**

8. Plaintiff is and has been continuously throughout all relevant times the owner of Plantronics common stock.  Plaintiff resides in this District.

9. Defendant Plantronics is a Delaware corporation.  Plantronics' common stock is traded on the New York Stock Exchange under the ticker symbol "POLY."

10. Defendant Robert C. Hagerty is Chairperson of the Board of Directors of Plantronics (the "Board").

11. Defendant Marv Tseu is Vice Chairman of the Board of the Company.

12. Defendant Dave Shull is President, Chief Executive Officer, and a director of the Company.

13. Defendant Kathy Crusco is a member of the Board.

14. Defendant Brian Dexheimer is a member of the Board.

15. Defendant Greggory Hammann is a member of the Board.

16. Defendant Guido Joret is a member of the Board.

17. Defendant Talvis Love is a member of the Board.

18. Defendant Marshall Mohr is a member of the Board.

19. Defendant Daniel Moloney is a member of the Board.

20. Defendant Yael Zheng is a member of the Board.

21. Defendants identified in ¶¶ 10-20 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

22. Plantronics creates premium audio and video products including headsets, video and audio-conferencing products, desk phones, analytics software, and services.

23. On March 25, 2022, Plantronics entered into the Merger Agreement.

24. The press release announcing the Proposed Merger provides as follows:

HP Inc. (NYSE: HPQ) today announced a definitive agreement to acquire Poly (NYSE: POLY), a leading global provider of workplace collaboration solutions, in an all-cash transaction for $40 per share, implying a total enterprise value of $3.3 billion, inclusive of Poly's net debt.

The acquisition accelerates HP's strategy to create a more growth-oriented portfolio, further strengthens its industry opportunity in hybrid work solutions, and positions the company for long-term sustainable growth and value creation.

The rise of hybrid work is creating sustained demand for technology that enables seamless collaboration across home and office environments. Approximately 75% of office workers are investing to improve their home setups to support new ways of working[1]. Traditional office spaces are also being reconfigured to support hybrid work and collaboration, with a focus on meeting room solutions. Currently, there are more than 90 million rooms, of which less than 10% have video capability[2]. As a result, the office meeting room solutions segment is expected to triple by 2024[3].

3

"The rise of the hybrid office creates a once-in-a-generation opportunity to redefine the way work gets done," said Enrique Lores, President and CEO of HP. "Combining HP and Poly creates a leading portfolio of hybrid work solutions across large and growing markets. Poly's strong technology, complementary go-to-market, and talented team will help to drive long-term profitable growth as we continue building a stronger HP."

Dave Shull, Poly CEO and President, added: "I am thrilled about the opportunity this represents for Poly, our employees, partners and customers. The combination gives us an opportunity to dramatically scale, reaching new markets and channels, supercharging our innovation with a like-minded partner. This transaction offers compelling and certain value for our shareholders and speaks to the hard work done by our teams to become a recognized leader in helping businesses everywhere meet the challenges of a generational disruption in the way people work."

In a more hybrid world, cloud platforms like Zoom and Microsoft Teams will play an important role in innovating new experiences. Eric Yuan, Founder and CEO of Zoom added, "Highest quality audio and video has become an essential component of work across every industry, whether in an office, at home, or on the go. Bringing the Poly and HP offerings together will unlock new opportunities to partner with Zoom and turn any space into a hub for dynamic video collaboration."

Poly will help drive the growth and scale of HP's peripherals and workforce solutions businesses. Peripherals represent a $110 billion segment opportunity growing 9% annually, driven by the need for more immersive experiences. Workforce solutions represent a $120 billion segment opportunity that is growing 8% annually, as companies invest in digital services to set up, manage, and secure more distributed IT ecosystems. Poly's devices, software and services, combined with HP's strengths across compute, device management, and security, creates a robust portfolio of hybrid meeting solutions.

Poly is a leader in video conferencing solutions, cameras, headsets, voice and software. Together, HP and Poly will deliver a complete ecosystem of devices, software, and digital services to create premium employee experiences, improve workforce productivity, and provide enterprise customers with better visibility, insights, security, and manageability across their hybrid IT environments.

HP expects the transaction to be immediately accretive to HP's revenue growth, margins, and non-GAAP EPS at close. With the expanded value proposition of a complete hybrid work solution, combined with HP's scale and go-to-market capabilities, HP expects to realize substantial revenue synergies in peripherals as well as meeting room and workforce solutions. HP will be able to cross-sell across its global commercial and consumer sales channels, while driving incremental sales from combining Poly's products with HP's PC portfolio. As a result, HP expects to achieve $500 million of revenue synergies by FY25 and accelerate Poly's revenue growth to an approximately 15% CAGR over the first three years after closing. In

addition, HP expects the transaction to improve Poly's operating margins by approximately six percentage points from current levels by FY25, driven by scale efficiencies across supply chain, manufacturing and overhead.

The transaction is expected to close by the end of calendar 2022, subject to Poly stockholder approval, required regulatory clearances, and the satisfaction of other customary closing conditions. HP will finance the transaction through a combination of balance sheet cash and new debt.

This transaction is consistent with HP's capital returns program target. HP remains committed to aggressively buying back shares of at least $4 billion in FY22, and to returning significant capital to shareholders while continuing to invest in growth.

25.     On May 2, 2022, defendants filed the Proxy, which fails to disclose material information regarding the Proposed Merger.

<u>Financial Projections</u>

26.     The Proxy fails to disclose material information regarding Plantronics' financial projections, specifically: the line items underlying the financial projections.

27.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

<u>Financial Analyses</u>

28.     The Proxy fails to disclose material information regarding the financial analyses conducted by Morgan Stanley.  When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

29.     Regarding Morgan Stanley's Discounted Equity Value Analysis, the Proxy fails to disclose: (i) the inputs and assumptions underlying the discount rate and multiples utilized by Morgan Stanley; and (ii) the fully diluted shares utilized by Morgan Stanley.

30. Regarding Morgan Stanley's Discounted Cash Flow Analysis, the Proxy fails to disclose: (i) the terminal values utilized by Morgan Stanley; (ii) the inputs and assumptions underlying the discount rates and perpetuity growth rates utilized by Morgan Stanley; and (iii) the fully diluted shares utilized by Morgan Stanley.

31. Regarding Morgan Stanley's Illustrative Precedent Transaction Premiums analysis, the Proxy fails to disclose: (i) the transactions utilized by Morgan Stanley; and (ii) the premiums paid in the transactions utilized by Morgan Stanley.

32. Regarding Morgan Stanley's Equity Research Analysts' Future Price Targets analysis, the Proxy fails to disclose: (i) the price targets utilized by Morgan Stanley; and (ii) the sources of the price targets utilized by Morgan Stanley.

## COUNT I

**Claim Against the Individual Defendants and Plantronics for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

33. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

34. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

35. Plantronics is liable as the issuer of these statements.

36. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

37. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

38. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

39. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

40. The Proxy is an essential link in causing plaintiff to approve the Proposed Merger.

41. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

42. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

43. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Plantronics within the meaning of Section 20(a) of the Exchange Act as alleged herein.

45. Due to their positions as officers and/or directors of Plantronics and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

47. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

48. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Proxy.

49. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

50. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

51. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

52. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

Case 2:22-cv-01861-GAM   Document 1   Filed 05/12/22   Page 9 of 9

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  May 12, 2022

**GRABAR LAW OFFICE**

By: _____
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*

9